**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RECEIVED

NOV 0 6 2007

NOV 06 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Traci Cannon-Stokes )
160 N Waller Ave )
Chicago Illinois 60644 )
(Name of the plaintiff or plaintiffs) )
)                    CIVIL ACTION
)
v. )                   07CV6283
)                    JUDGE KENNELLY
John E Potter Postmaster )       MAG. JUDGE MASON
General, United States Postal )
Service )
(Name of the defendant or defendants) )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is ___Traci Cannon-Stokes___ of the
county of ___Cook___ in the state of ___Illinois___.

3. The defendant is ___John E Potter Postmaster General___, whose
street address is ___244 Knollwood Drive 2nd Floor___,
___Bloomingdale___
(city)___ (county)___COOK___ (state)___IL___ (ZIP)___60117-3010___

(Defendant's telephone number) ___(800)-275-8777___

4. The plaintiff sought employment or was employed by the defendant at (street address)
___Milton Brunson Station 324 s. lavamie___ (city) ___Chgo___
(county)___Cook___ (state)___IL___ (ZIP code)___60644___

5.  The plaintiff [*check one box*]

(a) ☒  was denied employment by the defendant.

(b) ☐  was hired and is still employed by the defendant.

(c) ☐  was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) January, (day) 24, (year) 2005.

7.1  *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff  [*check one box*]  ☐ *has not* ☐ *has*  filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i)  ☐ the United States Equal Employment Opportunity Commission, on or about (month)_____ (day)_____ (year)_____.

(ii)  ☐ the Illinois Department of Human Rights, on or about (month)_____ (day)_____ (year)_____.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is attached.  ☐ YES.  ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

☒    Yes (month) _Sept_____ (day) _20_ (year) _2005___

☐    No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month) _December_
(day) _23__ (year) _2005_ .

(c)    Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES    ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ YES    ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐    the United States Equal Employment Opportunity Commission has not issued

a *Notice of Right to Sue*.

(b)☒    the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue*, which was received by the plaintiff on
(month) _August_ (day) _9_ (year) _2007_ a copy of which
*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only
those that apply*]:

(a)☐    Age (Age Discrimination Employment Act).

(b)☐    Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

(c) ☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

4

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

_please read attached Complaint_

_____

_____

_____

_____

_____

14.    **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☒ YES    ☐ NO

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒    Direct the defendant to (specify): _Compensate plaintiff for the time off and for the undue hardships_

that the (agency) defendant placed aupon
plaintiff who is a single mother with two
children.

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

Traci Lyn Cannon-Stokes

(Plaintiff's name)

Traci L Cannon-Stokes

(Plaintiff's street address)

160 N. Waller Ave

Chicago, 7

(City) Chicago  (State) IL  (ZIP) 60644

(Plaintiff's telephone number) (773) - 386-2700

Date: Oct 31, 2007

6

**United States District Court**
**Northern District of Illinois**

|                          |     |
|--------------------------|-----|
|                          | )   |
|                          | )   |
|                          | )   |
|                          | )   |
| **Traci Cannon-Stokes,** | )   |
| **Plaintiff**            | )   |
|                          | )   |
| **v.**                   | )   |

**John E. Potter,Postmaster**
**General,**
**USPS**
**Defendant**

### COMPLAINT

Traci Cannon-Stokes brings suit in the district court under the Rehabilitation Act of 1964, 29 U.S.C. 791 et seq.,Title VII of the Civil Rights Act of 1964, 42 U.S.C.  2000e-1,et seq., and  29 U.S.C. 701, et seq., alleging violation of the plaintiff's right to be free of discrimination based on two counts.(1) Disability and (2) Retaliation because of engaging in protected activity before the Northern District of Illinois,Eastern Division. The jurisdiction of the district court is pursuant to the above-named statutes and 28 U.S.C. sec 1331(a) and 42 U.S.C.  2000e-5(f)(3).

Title VII prohibits discrimination against a current or former employee or a job applicant "because he has made a charge,testified,assisted,or participated in any manner in an investigation,proceeding,or hearing under Title VII 42 U.S.C. 2000e-3(a). Traci Cannon-Stokes had a previous civil suit at the time that the USPS supervision erroneously retired her from her government employment  via word of mouth from head of human resources,John Richardson. John Richardson at that period of time was deposed by plaintiff's attorney for an extended day. This discharge violates a clear mandate of public policy.
 The USPS management staff forced plaintiff of the clock without even finalizing the necessary paperwork for OPM which was required by the USPS and then refused to let plaintiff use any of her leave to compensate

herself  until her paperwork through the US department of Labor was processed.According to 580 FERS article 588.22  it is unlawful to take a government employee off of pay status without the employing office informing the employee in writing and ELM 588.5 employees status is to remain on postal service rolls pending the final disposition of an adverse action through the appeals procedures. Lastly the decision to accept the OPM retirement plan according to the ELM 589.124 is the final choice of the employee not management. According to the affidavits of both Ms.Joyce Payne,HR specialist and Karen washington, manager of Brunson station, they both was following the instructions of Head of Human Resource, John Richardson. The issue at hand is not merely to lost benefits but to the act of retaliation for participation  in a protected activity and the intentional infliction of emotional distress that the USPS placed upon the plaintiff.

X Traci Cannon Stokes   Oct 31, 2007

**Traci Cannon-Stokes**
**160 North Waller ave.**
**Chicago,Illinois 60644**
**773-386-2700**

# UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## CHICAGO DISTRICT OFFICE HEARINGS

| Name of Assigned Administrative Judge | Christa L. Zamora | | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|---|
| **Case Number** | 210-2005-00328X | | **Date** | Sept. 20, 2005 |
| **Case Title** | Cannon-Stokes v. USPS | | | |

**MOTION:**   [In the following box indicate the party filing the motion and state briefly the nature of the motion being presented.]

Order to Show Cause

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____ |
| (3) | ☐ | Answer brief to motion due _____.  Reply to answer brief due _____. |
| (4) | ☐ | Ruling on _____ set for _____ at _____. |
| (5) | ☐ | Status [held/continued to] [set for/re-set for] on _____ set for _____ at _____ by telephone. |
| (6) | ☐ | Prehearing conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____ by telephone. |
| (7) | ☐ | Hearing [set for/re-set for] on _____ set for _____ at _____. |
| (8) | ☐ | Hearing held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]. |

(10) ■    [Other docket entry] Complainant must respond to this order by no later than October 4, 2005, explaining why she should not be sanctioned for failure to comply with the orders of this court.  If Complainant fails to timely comply with the Administrative Judge's orders or the Commission's regulations or fails without good cause to timely appear and to proceed for any scheduled proceeding, the complaint may be dismissed or returned to the Agency for a final agency decision without a hearing.  Other appropriate sanctions may also be issued against any part, including those listed at 29 C.F.R. § 1614.109(f).

In this case, the court issued an acknowledgment and scheduling order on June 16, 2005.  This order required the parties to file their prehearing submissions by August 30, 2005.  On August 30, 2005, the Agency filed the required prehearing submissions in this case.  The Agency also filed a motion for a decision without a hearing.  Complainant failed to file her prehearing submissions and respond to the Agency's motion.  Therefore, absent a showing a good cause, sanctions will be issued.

Alternatively, if Complainant wishes to withdraw her hearing request and opt for a final agency decision, she should submit her request in writing.

| (11) | ☐ | [For further detail see order (on reverse side of/attached to) the original minute order.] |

| | | |
|---|---|---|
| | No notices required, advised verbally. | A copy of the order sent to the following: |
| ■ | Notices mailed/faxed by Clerk of Hearings or other EEOC Staff. | Traci L. Cannon-Stokes<br>160 North Waller Avenue<br>Chicago, Illinois 60644-2901 |
| | Notified counsel/Representative/Pro Se Party by telephone. | Richard Rampage |
| ■ | Copy to Administrative Judge. | USPS Law Department<br>222 S. Riverside Plaza, Suite 1200<br>Chicago, Illinois 60606-6105 |
| | Mailing Clerk Initials | |
| Notes: | | |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C.  20036**


Traci L. Cannon-Stokes, .
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Request No. 0520070665

Appeal No. 0120062233

Agency No. 4J-606-0086-05

## DENIAL OF REQUEST FOR RECONSIDERATION

Complainant timely requested reconsideration of the decision in *Traci L. Cannon-Stokes v. United States Postal Service*, EEOC Appeal No. 0120062233 (May 9, 2007). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 0120062233 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court.

3                                          0520070665

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**. I certify that this decision was mailed to the following recipients on the date below:

Traci L. Cannon-Stokes
160 N Waller Ave
Chicago, IL  60644

U.S. Postal Service (Great Lakes)
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL  33622-1979

AUG − 1 2007
_____
Date

_____
Equal Opportunity Assistant

2                                          0520070665

"Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").


FOR THE COMMISSION:


_____
Carlton M. Hadden, Director
Office of Federal Operations


AUG − 1 2007
_____
Date

APPEALS PROCESSING CENTER
GREAT LAKES AREA

 **UNITED STATES POSTAL SERVICE**

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF

**Traci L. Cannon-Stokes,**
**Complainant,**                                    **Agency No.:  4J-606-0086-05**

v.

                                                   **Formal Filed:  March 2, 2005**

**John E. Potter,**
**Postmaster General,**
**c/o Great Lakes Area Field Operations**
**Respondent.**

### Notice of Final Agency Decision

This is the final agency decision of the U.S. Postal Service regarding your complaint of discrimination identified above. In that complaint, you alleged that you were subjected to discrimination on the bases of mental disability (Post Traumatic Stress Disorder, Depression) and retaliation (prior EEO activity; civil action) when: (1) on January 25, 2005, you were discharged from the Postal Service because you filed a claim for disability retirement; and (2) on February 16, 2005, you learned that Karen Washington, Manager of Customer Service at the Brunson Station, purposely delayed the processing of your back pay. (Report of Investigation (ROI), Issues to be Investigated, page (pp) 1-6).

Initially, your complaint included one (1) additional allegation. However, on March 11, 2005, the date of the agency's acceptance/partial dismissal decision, the allegation was dismissed in accordance with 29 C.F.R. Part 1614.107(a)(1), on the basis that an agency shall dismiss a complaint that fails to state a claim. (ROI, Issue to be Investigated, pp. 1-6). I have reviewed the record and I agree that the allegation was properly dismissed in accordance with 29 C.F.R. 1614.107. Consequently, the March 11, 2005, acceptance/partial dismissal decision is herein endorsed and incorporated by reference for the purpose of this final agency decision.

An Equal Employment Opportunity Investigator processed your complaint. The investigation was completed on May 7, 2005, and a copy of the Investigative Report was transmitted to you. Following receipt of the ROI and rights you elected a hearing before an Equal Employment Opportunity Commission Administrative Judge (EEOC AJ). The agency transmitted the Report of Investigation to the EEOC and the EEOC docketed the matter for hearing as Case No. #210-2005-00328X.

244 KNOLLWOOD DRIVE, FLOOR 2
BLOOMINGDALE, IL 60117-3010
TEL: 630-539-8188
FAX: 630 539 8388
WWW.USPS.COM

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 2

Although you initially requested a hearing, Administrative Judge Christa L. Zamora remanded your complaint to the Postal Service, by Order dated November 29, 2005, for the issuance of a final agency decision.[1] Accordingly, this decision is being issued in compliance with the order of the Administrative Judge.

Applicable Law

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently refined that analysis in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The *McDonnell Douglas* and *Burdine* approach involves a three-step process when a complainant alleges intentional discrimination (commonly referred to as a "disparate treatment" claim).

The complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish by a preponderance of the evidence a *prima facie* case of discrimination on the alleged basis. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 576 (1978). A complainant may establish a *prima facie* case of discrimination with circumstantial evidence by showing that he or she (1) belonged to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

Once a *prima facie* case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Furnco Construction Co.*, 438 U.S. at 578. See also *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. *Burdine*, 450 U.S. at 254. If the employer meets this burden, any presumption of

---

[1] On September 20, 2005, Traci Cannon-Stokes was ordered to show cause for her failure to follow the EEO Administrative Judge's (AJ) orders, namely, to file her prehearing submissions and to respond to the Agency's summary judgment motion. The complainant filed her response on October 2, 2005, asserting that she was not knowledgeable of the process. Notably, the complainant did not submit her prehearing submissions nor respond to the Agency's motion for summary judgment. According to the AJ sanctions were warranted, because the complainant failed to show good cause for her failure to follow the Commission's orders; thus, her request for a hearing is dismissed with prejudice. The AJ remanded the complaint to the Agency for issuance of a decision on the merits pursuant to Commission regulations at 29 C.F.R. Part 1614.

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 3

discrimination created by the *prima facie* case disappears; it simply "drops from
the case." *Hicks*, 509 U.S. at 507; *U.S. Postal Service v. Aikens,* 460 U.S. 711,
715 (1983).

The complainant can then prevail only if he or she proves that the employer's
reasons are not only pretext but are pretexts for discrimination. *Hicks*, 509 U.S.
at 507, 516; *Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *Swanson v.
General Services Administration*, 110 F.3d 1180, 1185 (5th Cir. 1997). Thus, the
complainant cannot create a factual issue of pretext based merely on personal
speculation that there was discriminatory intent. *Southard v. Texas Board of
Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). The complainant always
carries the "ultimate burden of persuading the trier of fact that he has been the
victim of intentional discrimination." *Burdine*, 450 U.S. at 254; *Hicks*, 509 U.S. at
511. At all times, the ultimate burden of persuasion remains with the
complainant. *Board of Trustees of Keene College v. Sweeney*, 439 U.S. 24, 25
N.2 (1978). This burden was reaffirmed and clarified in *St. Mary's Honor Center
v. Hicks*, 509 U.S. 502 (1993). In *Hicks*, the Court held that in order to impose
liability upon an employer for discriminatory employment practices there must be
an ultimate finding of unlawful discrimination regardless of whether or not the
employer's explanation for its action was believable.

### Disability – Disparate Treatment

Courts have adopted and applied the Title VII burdens of proof to disability
discrimination. See *Norcross v. Sneed*, 755 F.2d 113 (8th Cir. 1985); *Prewitt v.
U.S. Postal Service*, 662 F.2d 292 (5th Cir. 1981). In order to establish a *prima
facie* case of disability discrimination, a complainant must prove, by a
preponderance of the evidence, that he was treated differently than individuals
not within his protected group, or that the agency failed to make a needed
reasonable accommodation, resulting in adverse treatment of the complainant.
See *Session v. Helms*, 751 F. 2d 991, 992-3 (9th Cir.), cert. denied 474 U.S. 846
(1985). A complainant also must demonstrate a causal relationship between the
disabling condition and the agency's reasons for the adverse action.

### Disability – Accommodation

In order to assert a claim of disability discrimination, a complainant must satisfy
the threshold requirement that s/he is a disabled person as defined by the
Rehabilitation Act of 1973. EEOC Regulation 29 C.F.R. 1630.2(g) defines a
person with a disability as one who: (i) has a physical or mental impairment
which substantially limits one or more of such person's major life activities; (ii)
has a record of having such an impairment; or (iii) is regarded as having such an
impairment. Major life activities include, but are not limited to, caring for oneself,
performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 4

and working. 29 C.F.R. 1630.2(l). The Interpretive Appendix to that regulation
notes that "other major life activities include, but are not limited to, sitting,
standing, lifting, reaching." See Appendix to 29 C.F.R. 1630.2(i). The regulation
defines a "qualified individual with a disability" as a person "who, with or without
reasonable accommodation, can perform the essential functions of the position in
question without endangering the health and safety of the individual or others. . ."
29 C.F.R. 1614.203(a)(6).

The U.S. Supreme Court has held that the determination of whether a person is
an "individual with a disability" must be based on his or her condition at the time
of the alleged discrimination. The positive and negative effects of mitigating
measures used by the individual, such as medication or an assistive device, must
be considered when deciding if he or she has an impairment that substantially
limits a major life activity. *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999);
*Murphy v. United Parcel Service, Inc.*, 527 U.S. 516 (1999). The Office of
Personnel Management regulations defining medical documentation required for
a disability claim provide at 5 C.F.R. 339.102: "(a) the history of the specific
medical condition(s), including references to findings from previous
examinations, treatment and responses to treatment; (b) clinical findings from the
most recent medical evaluation, including any of the following which have been
obtained: findings of physical examination, results of laboratory tests, X-rays,
EKG's and other special evaluations for diagnostic procedure, and in the case of
psychiatric disease, the findings of a mental status examination and the results of
psychological studies; (c) assessment of the current clinical status and plans for
future treatment; (d) diagnosis; (e) an estimate of the expected date of full or
partial recovery; (f) an explanation of the impact of the medical condition on the
life activities both on and off the job; (g) narrative explanation of the medical
basis for any conclusions that the medical condition has or has not become static
or well stabilized; ..."

*Retaliation* [2]

To establish a *prima facie* case based on reprisal, a complainant must show that:
(1) he/she engaged in prior protected activity; (2) the agency official was aware
of the protected activity; (3) he/she was subsequently disadvantaged by an
adverse action; and (4) there is a causal link between the protected activity and
adverse action. *Hochstadt v. Worcester Foundation for Experimental Biology,
Inc.*, 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976);

---

[2] An employer may not fire, demote, harass or otherwise "retaliate" against an individual for filing a charge
of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination. The
same laws that prohibit discrimination based on race, color, sex, religion, national origin, age, and
disability, as well as wage differences between men and women performing substantially equal work, also
prohibit retaliation against individuals who oppose unlawful discrimination or participate in an employment
discrimination proceeding.

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 5

Manoharan *v. Columbia University College of Physicians and Surgeons*, 842 F. 2d 590, 593 (2nd Cir. 1988); *Witmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000). The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980). In addition, in *Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979), aff'd 452 U.S. 161 (1981), the court held that essential to the link between protected activity and adverse action is showing that the official taking action was aware that the complainant engaged in protected activity. To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

Any harassment of an employee that would not occur but for the employee's previous EEO activity may violate Title VII if sufficiently patterned or pervasive. *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985). For harassment to be considered retaliatory conduct in violation of Title VII, it must be sufficiently pervasive or severe as to create a hostile work environment which significantly and adversely affects the emotional or psychological well-being of the employee, and must somehow be connected to that employee's previous EEO activity. See *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412-1413 (10th Cir. 1987); *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1394 (8th Cir. 1983); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982); *Bundy v. Jackson*, 641 F.2d 934, 943-944 (D.C. Cir. 1981); *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971).

Discussion/Analysis

**Claim #1:** Traci Cannon-Stokes is employed as a Carrier Technician at the Rev. Milton Brunson Station, Chicago, Illinois. (ROI, Exhibit 1). On December 30, 1989, the complainant received a career appointment with the Postal Service as a City Letter Carrier assigned to the Chicago, Illinois Post Office. (Id.). The complainant is covered by the Federal Employees Retirement System (FERS). (Id). On January 25, 2005, the complainant alleges she was discharged from the Postal Service because she filed a claim for disability retirement. The complainant alleges she suffers from the following disabilities: (1) Post-Traumatic Stress Disorder ("PTSD"); (2) Stress Disorder; (3) Depression; and (4) Anxiety. (ROI, Affidavit A, p. 10). The complainant stated she was diagnosed with Post-Traumatic Stress Disorder, Depression and Anxiety "after the incident."[3] (ROI,

---

[3] On November 4, 1995, the complainant alleges she was attacked by a postal customer while delivering mail to 5050 W. Washington, Chicago, IL, causing injuries to her neck as well as mental distress. On November 6, 1995, the complainant submitted a Form CA-1, seeking benefits and compensation under the

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 6

Affidavit A, pp. 11-12). The complainant stated agency officials became aware of her disability through the processing of her injury compensation claim and subsequent change to a modified carrier status.[4] The complainant states her medical and psychiatric conditions substantially and significantly limit her ability to work in public, while alone, and to interact or communicate with people with whom she is unfamiliar. The complainant states she does not walk her child to school or grocery shop. She does not attend movies, take vacations, or go away for self pleasure. The complainant states she is able to perform indoor carrier work only. In addition, the complainant stated she has sustained a repetitive movement injury. The complainant applied for disability retirement under FERS in March 2004.[5]

The complainant asked the Injury Compensation office about disability retirement and was referred to Specialist Payne in Human Resources. The complainant

---

Federal Employees Compensation Act ("FECA"). (ROI, Post Investigative Documents, Memorandum of Law in Support of the Respondent's Motion For Summary Judgment).

[4] An offer of a Modified Carrier position is dated February 12, 1997. The duties of the position include casing and routing letters and flats on various letter routes; block mail and directory mail; mark-out mail and undeliverable and second generation mail; all Carrier duties. "(No street duties)." (ROI, Exhibit 2).

[5] On March 4, 2004, the complainant met with Specialist Payne and completed an application for disability retirement. (ROI, Affidavit D, p. 7; Post Investigation Documents, Exhibit 5). That same day the complainant executed a receipt for a document which expressly stated "if you apply for disability retirement, it means that you will be giving up your job, and retiring early due to a disability." (Post Investigative Documents, Exhibit 5, p. 4). On April 9, 2004, the complainant submitted a completed Standard Form 3112A ("SF 3112A"), Applicant's Statement of Disability. Post Investigative Documents, Exhibit 6). On the SF 3112A, the complainant states she has been disabled from her position since November 5, 1995. On June 1, 2004, Specialist Payne completed a Standard Form 3112D ("SF 3112D"), Agency Certification of Reassignment and Accommodation Efforts, in which she certified that reassignment was not possible as there were no vacant positions within the Postal Service at the complainant's grade and pay level for which she met the minimum qualification standards. (ROI, Post Investigation Documents, Exhibit 7). On July 30, 2004, Manager Washington completed a Standard Form 3112B ("SF 3112B"), Supervisor's Statement. (ROI, Post Investigation Documents, Exhibit 8). On the SF 3112B, Manager Washington identified that Traci Cannon-Stokes was unable to perform the critical element of a city letter carrier position of delivering mail outside. (Id. at p. 2). On the SF 3112B, Manager Washington stated Traci Cannon-Stokes has been accommodated by not having to perform any outside delivery work. Id. An employee seeking disability retirement under FERS must document the following: (1) a deficiency in service with respect to performance, attendance or conduct, or, in the absence of any actual service deficiency, a showing that the medical condition is incompatible with either useful service or retention in the position; (2) a medical condition that is defined as a health impairment resulting from disease or injury; (3) a causal relationship between the medical condition and the service deficiency; (4) the duration of the medical condition and a showing that it will in all probability continue for at least one year from the date that the application for disability retirement has been filed; and (5) the employing agency's inability to reasonably accommodate the employee's medical condition, including reassigning the employee to any vacant position for which she is otherwise qualified. (ROI, Post Investigation Documents, Exhibit 4 at pp. 2, 8).

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 7

received a letter from the Office of Personnel Management (OPM) in November 2004, informing her that her disability retirement application had been approved.[6]

Subsequently, the complainant called OPM and inquired about notifying the Office of Workers Compensation (OWCP) about the approval. The OPM representative told the complainant that OPM and OWCP are two separate agencies. The complainant then contacted OWCP and was told that OWCP was responsible for "keeping employees at work", not retirements.

The complainant states in December 2004, she told Specialist Payne that she wanted to apply for OWCP disability. (Affidavit A, pp. 12-15). The complainant was on sick leave from January 20 through January 24, 2005. When the complainant reported to work on January 25, 2005, Supervisor McCoy would not allow her to work, advising her she had to leave work because her application for disability retirement had been approved.

The complainant spoke with Manager Washington and Specialist Payne, who told her that Manager Richardson had given the instruction to take her off agency roles effective January 21, 2005. The complainant states she was unaware of other employees who applied for disability retirement and were provided with written notice of the approval of the retirement. The complainant stated the retirement handbooks indicate that an employee has a choice of whether or not to accept disability retirements. Furthermore, the complainant stated that CSRS and FERS Handbook indicate that OWCP offers a retirement program based on disability. The complainant states the Handbook requires the Agency to permit an employee to withdraw a disability application prior to an effective date of separation. (Affidavit A, pp. 12-15). The complainant withdrew her application for disability retirement benefits on January 31, 2005.[7] (ROI, Exhibit 6).

---

[6] By letter dated November 2, 2004, Shirley Kirksey, Legal Administrative Specialist for OPM, informed the agency that the complainant's application for disability retirement under FERS had been approved and requested information regarding her last day in a pay status. (ROI, Exhibit 5). Specialist Kirksey's November 2, 2004 letter was also sent to Traci Cannon-Stokes. (ROI, Post Investigation Documents, Exhibit 5, p. 1).

[7] The complainant gave Specialist Payne a notarized letter, dated January 25, 2005, that was addressed to an individual named Robin Russell, stating "AS (sic) per our telephone conversation on 1-25-05, I am notarizing and putting in writing that I personally told Ms. Joyce Payne that I declined the disability retirement through OPM due to the fact that the disability is an on-the-job injury and the OWCP had not approved it nor did my agency representative, Ms. Kincaid, notify them after she sent me to human resources to Ms. Payne. I have not signed any paper work as to accepting the disability retirement nor did give management my last date that would be working." (ROI, Affidavit B, p. 8; Post Investigative Documents, Exhibit 9).

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 8

Traci Cannon-Stokes testified that she has filed the following EEO complaints: 4J-606-1208-96 which became civil case 03CV1942; 4J-S06-0013-00; 4J-606-0252-00-2000 (sic); 4J-60S-0173-01-2001 (sic); and 4J-606-0211-03-2003 (sic). The complainant states Manager Washington was identified as an alleged responsible official in the case filed in 2003. In addition, the complainant asserted that Manager Richardson was identified in the 1996 EEO complaint which is now in Civil Court appeal. The complainant states Manager Richardson was deposed for that case in October 2004. (ROI, Affidavit A, p. 12).

To recover on her claim of disability discrimination, Cannon-Stokes must prove: (1) that she has a disability as defined by 29 C.F.R. § 1630.2(g); (2) that she is a "qualified individual with a disability" as defined by 29 C.F.R. § 1630.2(m); and (3) that "she was subjected to an adverse personnel action under circumstances giving rise to an inference of disability discrimination and/or denied an accommodation." *Imbat v. U.S. Postal Service*, EEOC Appeal No. 01A32600 (May 13, 2004).

For claim #1, Traci Cannon-Stokes' claims of discrimination failed for a number of reasons. First, the complainant is unable to establish a *prima facie* case of disability discrimination as she is not a qualified individual with a disability. The complainant is unable to perform one of the essential functions of her position, carrying mail, and there simply is no reasonable accommodation that would allow her to do so. In addition, there are no vacant and funded positions that the complainant is otherwise qualified for, and/or to which she could be reassigned; thus she failed to establish a *prima facie* case of disability discrimination.

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) she engaged in prior protected activity i.e., opposed unlawful discriminatory employment practices, or participated in the EEO process; (2) the employer was aware of the protected activity; (3) she was subsequently disadvantaged by an adverse action; and (4) there is a causal link between the protected activity and adverse action. *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); *Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F. 2d 590, 593 (2nd Cir. 1988); *Witmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000).

Traci Cannon-Stokes failed to establish a *prima facie* case of retaliation on the basis that she failed to establish a nexus between her prior EEO activity and her absence from work between January 25, 2005 and February 14, 2005. While Manager Richardson and Manager Washington admittedly knew the complainant had engaged in prior EEO activity, there is absolutely no evidence that their actions in this case were motivated by a desire to deter her or others from availing themselves of the EEO process.

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 9

Finally, even assuming that the complainant has established a *prima facie* case of disability and reprisal discrimination, the agency has articulated a legitimate, nondiscriminatory reason for not allowing the complainant to work from January 25, 2005 till February 14, 2005. Namely, that OPM had approved her application for disability retirement under FERS. Once OPM notified the Postal Service that the complainant had withdrawn her application for disability retirement, upon receipt of that notification, agency officials took immediate action to return the complainant to duty. The complainant has presented absolutely no evidence to refute these reasons, or to establish that the agency's testimony is inaccurate or merely a pretext to hide prohibited discrimination.

Assuming *arguendo,* that the complainant is a disabled individual within the meaning of the Rehabilitation Act, she must still establish that she is a "qualified individual with a disability" for her claim to survive. *Isaacson v. U.S. Postal Service*, EEOC Appeal No. 01A30257 (April 15, 2004). A qualified individual with a disability is one who "satisfies the requisite skill, experience, education and other job related requirements of the employment position [he/she] holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of the position." *Smith v. Dept of the Navy*, EEOC Appeal No. OIA13473 (October 8, 2002).

An employer is not required to offer an accommodation that would eliminate an essential function of a particular job. *Marso v. Dep't of Justice*, EEOC Appeal No. 07A10094 (May 15, 2003) (citing to the EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, at p. 9, 29 (rev. October 17, 2002)). If an employee is unable to perform the essential functions of their assigned position, the employer must consider reassigning the employee to another vacant, funded position that the employee is otherwise qualified to perform. *Bielfelt v. U.S. Postal Service*, EEOC Appeal No. 01A10475 (June 19, 2002). At all times the burden is on the complainant to demonstrate by a preponderance of the evidence that there were vacant, funded positions during the relevant time period to which he/she could have been reassigned. *Isaacson*, EEOC Appeal No. 01A30257 (citing *Hampton v. U.S. Postal Service*, EEOC Appeal No. 01986308 (August 1, 2002)). "In the federal government, a position is vacant for purposes of reassignment if it is funded and not yet encumbered, even if the agency has already posted a notice advertising the position, or if it is not yet available, but is expected to become available within a reasonable amount of time." *Reagins v. U.S. Postal Service*, EEOC Appeal No. 01974481 (April 6, 2000).

Reassignment under the Rehabilitation Act does not require that the employer promote the disabled employee. *Brown v. U.S. Postal Service*, EEOC Appeal No. O1A30626 (May 11, 2004) (citing to the EEOC Enforcement Guidance:

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 10

Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (as revised October 17, 2003) at "Reassignment."). The employer is also under no obligation to create "a 'make work' assignment because such an assignment is not a vacant, funded position." *Testa v. U.S. Postal Service*, EEOC Appeal No. 01A13517 (October 30, 2002). As such, the employer is under no obligation "to transform its temporary light duty assignments into permanent jobs to accommodate an employees' disability." *Imbat*, EEOC Appeal No. 01A32600 (citations omitted).

The facts of this complaint are relatively straight forward. Traci Cannon-Stokes has been unable to perform the duties of her assigned position with the Postal Service since sustaining her on-the-job injury in November of 1995. Since sustaining her injury, the complainant has been able to perform only make-work, limited duty assignments that are crafted together because of the Postal Service's obligations under the FECA. The complainant's position as a city letter carrier requires her to deliver mail to postal customers along proscribed delivery routes within the City of Chicago. Since incurring her job-related injury in 1995, the complainant has simply been unable to perform this essential function of her position. The complainant has failed to articulate a reasonable accommodation that would allow her to perform this essential function of her position. The only possible accommodation would be to eliminate this function, and that is something the Postal Service is not required to do as a matter of law.

While the Postal Service was obligated to attempt reassignment as an accommodation for the complainant, this was not a viable option as there were no vacant positions that she was otherwise qualified to perform, and that she could be reassigned. Except for her limited duty assignments, which are not vacant, funded positions within the meaning of the Rehabilitation Act, Traci Cannon-Stokes has failed to identify any vacant positions that she could be reassigned to as an accommodation for her alleged disabilities. The Rehabilitation Act was not enacted as a full-employment law. Its purpose was to provide a level playing field for disabled individuals so that they could compete for, as well as perform, fully established and funded positions within the federal government. As an entity within the federal government, the Postal Service is required to assist disabled individuals in performing the essential functions of its positions by providing reasonable accommodations that do not cause an undue burden on the organization. Eliminating the essential functions of a position, or creating a new position for the specific purpose of providing a disabled employee with work, are not burdens that the Rehabilitation Act places on the Postal Service.

The complainant is simply unable to do the job that she was hired to perform. In addition, there are no vacant positions at her level or below that she is otherwise qualified for and to which she could be reassigned. The fact that the Postal

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 11

Service created work for the complainant in compliance with its obligation under the FECA does not establish that she is a qualified individual with a disability.

The report of investigation conclusively demonstrates that Traci Cannon-Stokes is not a qualified individual with a disability who is entitled to protection under the Rehabilitation Act. As such, the complainant is unable to establish a *prima facie* case of disability discrimination.

The complainant has alleged that Manager Richardson, Supervisor McCoy, Specialist Payne, and Manager Wilkins retaliated against her when she was not allowed to work between the dates of January 25, 2005 and February 13, 2005. As with other theories of discrimination under Title VII, the McDonnell Douglas burden-shifting paradigm is applicable to allegations of reprisal discrimination when there is no direct evidence of discrimination. *Martin v. Dep't of the Navy*, EEOC Appeal No. 01A23151 (August 19, 2003).

While the initial inquiry under the McDonnell Douglas scheme focuses on whether the complainant has established a *prima facie* case, this order of analysis is unnecessary when the employer has articulated a legitimate, nondiscriminatory reason for its actions. *Washington v. Dep't of the Navy*, EEOC Petition No. 03900056 (May 31, 1990). In these instances, the trier of fact can bypass the prima facie analysis and skip to a determination of whether the complainant has demonstrated by a preponderance of the evidence that the employer's stated reasons were simply a pretext for engaging in prohibited discrimination. *Langley v. Social Security Admin.*, EEOC Appeal No. O1A15000 (June 2, 2003).

Again, the facts of this complaint are relatively simple and straightforward. Traci Cannon-Stokes was not allowed to work between the dates of January 25, 2005 and February 13, 2005, because her application for disability retirement under FERS had been approved by OPM. As soon as Manager Richardson learned that the complainant's application for disability retirement had been approved by OPM, he made the decision to take her off the rolls of the Postal Service and not allow her to work anymore. Except for the fact that Manager Richardson was aware of the complainant's prior EEO activity, the complainant has absolutely no evidence to rebut his articulated reason for not allowing her to work. The complainant has simply failed to establish a nexus between Manager Richardson's knowledge of her EEO activity, and her decision to initiate this chain of events by first applying for disability retirement.

The complainant voluntarily undertook this action and presented a body of evidence to OPM that she had a job-related impairment that effectively precluded her from gainful employment. Regarding her claim that the agency retaliated against her by applying OPM's decision there is absolutely no evidence that any

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 12

agency official was motivated by discriminatory animus. Nor is there evidence to establish that Manager Richardson's stated reasons were not credible or had no basis in fact. Instead, the record as a whole is entirely consistent with Manager Richardson's stated reasons.

Murdice McCoy, Supervisor, Customer Service is the complainant's immediate supervisor. Supervisor McCoy identified the complainant as a limited duty carrier who could only perform indoor carrier duties. (ROI, Affidavit E). Supervisor McCoy states Manager Washington told him on January 24, 2005, that the complainant was not to report for work on January 25, 2005, because the complainant's disability retirement had been approved. Supervisor McCoy states he did not know the complainant suffered from Post Traumatic Stress Disorder or Depression. (Id.). Supervisor McCoy states he had no knowledge of previous EEO activity by the complainant. (Id.).

Karen Washington testified that she has served as the Manager of Rev. Milton Brunson Station since April 2003. (ROI, Affidavit B). Manager Washington states the complainant has been unable to deliver mail outside the office since 1997. (Id.). Manager Washington further states the complainant was unable to perform the core functions of a letter carrier position and was assigned to perform indoor duties in approximately 1997. Manager Washington was unaware of any medical restrictions of the complainant at the time of this complaint. Manager Washington states she became aware of the complainant's Post Traumatic Stress Disorder in January 2004; however, she was unaware that the complainant suffers from Depression. (Affidavit B, p. 8-9). Manager Washington states she participated in the pre-hearing process for a previous EEO complaint and that an EEO professional spoke with her regarding a complaint filed by the complainant regarding the uniform policy. (Affidavit B, p. 9)

Manager Washington states she became aware that the complainant's disability retirement had been approved in January 2005, while attending a Complement Committee Review Board meeting. Manager Washington states that Specialist Payne and Manager Richardson told her that the complainant's disability retirement would begin on January 25, 2005 and was approved by OPM. Manager Washington states that the decision not to let the complainant work on January 25, 2005, was guided by the approval of the disability retirement. Manager Washington states she was not influenced by the complainant's prior EEO activity or her disability. (ROI, Affidavit B, p. 10). Manager Washington stated the complainant was returned to work on authority from Human Resources. Manager Washington states she was on vacation when the decision was made to allow the complainant to return to work. (ROI, Affidavit B, p. 11)

John Richardson is the Manager, Human Resources for the Chicago District. Manager Richardson states the complainant's application for disability retirement

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 13

required management's response that the complainant could no longer perform the duties of her position. (ROI, Affidavit C). Manager Richardson states the acceptance of her disability retirement application indicated that the complainant could not, in fact, perform her assigned duties. (Id.). Manager Richardson learned that the complainant's disability retirement had been approved during a station review where a review of staffing for each station was discussed. (Id.).

During that meeting, Manager Richardson states it became apparent that the complainant had been approved for disability retirement, but was still working. Manager Richardson states that the acceptance of her disability application by OPM demonstrated that she was unable to perform her duties "and any other duties provided as an accommodation by management." Manager Richardson stated the complainant should not have been working, placing herself in further danger of injury. Manager Richardson, states he told agency management officials that the complainant should not have been allowed to work and/or that if she could perform some duties she needed to withdraw her application for disability retirement. Manager Richardson stated the complainant could not be allowed to work until the application was withdrawn.[8] (Affidavit C. pp. 1-2)

Manager Richardson stated he became aware of the complainant's prior EEO activity through his position as Human Resources Manager, but could not recall how or when he became aware. (Id.). Manager Richardson stated his decision to prevent the complainant from working on January 25, 2005 was based upon declarations from the complainant and agency officials that she could not perform any duties. (Id.)

Joyce Payne, Human Resources Specialist stated her job duties include processing disability retirement applications. (ROI, Affidavit D). Specialist Payne stated she received OPM's approval of the complainant's disability retirement on November 15, 2004. (Id. and Exhibit 5). Specialist Payne states she spoke with the complainant on more than one occasion to determine her last day in pay status. Specialist Payne states the complainant told her that she needed to (and was unable to) contact the Injury Compensation office to determine how she could continue receiving OWCP pay for her medical expenses. (Id.).

Specialist Payne further states that on January 25, 2005, the complainant told her that she did not want to accept the disability retirement. (Id.). Subsequently, the complainant provided a copy of a letter she faxed to OPM regarding her choice not to accept the disability retirement. According to Specialist Payne, Manager Richardson made the decision regarding the complainant's last day in

---

[8] An employing agency must allow an employee to withdraw an application for disability retirement under FERS before the effective date of the employee's separation, or the date of the Office of Personnel Management's ("OPM") decision to allow the claim, whichever is later. (ROI, Exhibit 4. at pp. 4, 10.

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 14

pay status. Specialist Payne stated that a PS Form 50, Notification of Personnel Action, was never processed for the complainant's retirement; thus she was never separated. Specialist Payne stated she has no knowledge of the complainant's Post Traumatic Stress Disorder, Depression, or previous EEO activity. Specialist Payne did not know of any employees who were approved for disability and declined retirement between November 2003 and January 2005. (Id.).

**Claim #2:** On February 16, 2005, the complainant alleges she learned that Karen Washington, Manager of Customer Service at the Brunson Station, purposely delayed the processing of her back pay. The complainant alleges that Manager Washington purposely delayed the processing of her back pay for a three week period and refused to let her work. Traci Cannon-Stokes testified that she was not paid for the three (3) week period that management refused to let her work following January 25, 2005. (ROI, Affidavit A). The complainant states she was not provided with back pay for this period. The complainant states her pay stub continued to show her in a Leave Without Pay status and her retirement funds no longer appear on her pay stub. The complainant states she did not receive any severance pay.

According to the complainant, Union Steward Styles informed her that other employees that have been awarded back pay usually received it within one to two pay periods after returning to work. The complainant further alleges that Manager Washington delayed the processing of her back pay because she did not turn over time and attendance records to Union Steward Styles in a timely manner, and instead told Union Steward Styles to have her retrieve the records herself. The complainant further states Manager Washington did not appear for a grievance meeting on February 24, 2005. (Affidavit A, p. 15-16)

Manager Washington states the complainant was not paid during the period between January 25, 2005 and the date she returned to work (February 14, 2005) because she had been approved by OPM for disability retirement. (ROI, Affidavit B). Manager Washington, states the Office of Human Resources received a letter from OPM on February 7, 2005, stating the complainant had withdrawn her request for disability retirement. (Id.). Upon notification from Human Resources, the complainant was returned to work. Manager Washington stated the complainant's return to work date was guided by the amount of time necessary to process the administrative actions. Manager Washington stated that no other employees under her chain of command had retired in the year previous to the instant complaint. (Affidavit B. p. 12; Exhibit 8, p. 4).

Manager Richardson stated that following the agency's receipt of the OPM's notification that Traci Cannon-Stokes had withdrawn her disability retirement application she was then allowed to return to work. Manager Richardson stated

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 15

the complainant is not entitled to back pay because her non-duty, non-pay status was "the direct result of her declaration that she could not perform any duties." (Affidavit C, p. 2). On February 28, 2005, the NALC filed a grievance on behalf of Traci Cannon-Stokes to protest management's instruction that she not clock-in to work on January 25, 2005. On April 1, 2005, the Joint Postal Service-NALC Step B Team issued a final, binding decision denying Traci Cannon-Stokes' grievance and finding that the complainant was "not entitled to any monetary compensation." (ROI, Exhibit 8).

The complainant failed to state a claim for two reasons. First, her allegations are simply not true as she was never entitled to a back pay award. Second, even if her allegations were true, they constitute an impermissible collateral attack on the grievance process. The complainant provides absolutely no evidence that she ever received a back pay award. While the complainant did file a grievance over this matter with her collective bargaining representative, her grievance was ultimately denied and it was conclusively determined that she "was not entitled to any monetary compensation." The record is completely devoid of any authority for the complainant's claim that she was entitled to back pay for the period of January 25, 2005 through February 13, 2005, let alone that Manager Wilkins delayed the processing of any such award.

Because the complainant cannot demonstrate an absolute entitlement to back pay for this period of time, she cannot show that she was deprived a benefit of employment, and as such, she fails to state a viable claim of discrimination. Instead, a reasonable reading of this claim is that the complainant was dissatisfied with how Manager Wilkins responded when her union steward requested information regarding the time the complainant missed from work. Such an allegation fails to state a claim; however, it is nothing more than an impermissible collateral attack on the grievance process. See *Persley v. U.S. Postal Service*, EEOC Appeal No. 01995725 (February 7, 2001).

As demonstrated above, the undisputed material facts demonstrate that Cannon-Stokes is not a qualified individual with a disability. As such, Cannon-Stokes has no viable claim under the Rehabilitation Act. Since the agency articulated a legitimate, nondiscriminatory reason for its action, the burden returns to the complainant to demonstrate that the agency's articulated reason was a pretext for discrimination. To prevail in this matter, the complainant must now show the agency's reasons are pretextual. Pretext may be demonstrated by showing such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 16

Traci Cannon-Stokes failed to demonstrate that the agency's assertions were inaccurate and/or pretextual. The complainant failed to present any evidence to establish (1) that agency officials took the action because of her prior EEO activity; (2) that she is a qualified disabled person. Thus Traci Cannon-Stokes has not presented any argument which would contradict the agency's explanation. The Commission has held that an employer has the discretion to determine how best to manage its operations and may make decisions on any basis except a basis that is unlawful under the discrimination statutes. *Furnco Construction Co. v. Waters*, supra; *Nix v. WLCY Radio/Rayhall Communications*, 738 F.2d 1181 (11th Cir. 1984).

Conclusion

After carefully considering the entire record, and applying the legal standards outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Prewitt v. U.S. Postal Service*, 662 F.2d 292 (5th Cir. 1981) (applying the standard to cases brought under the Rehabilitation Act); and *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318 (D.Mass), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases); I find that you have failed to prove that you were subjected to discrimination as alleged. Consequently, your case is now closed with a finding of no discrimination.

Appeal to the EEOC

You have the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848, within 30 calendar days of your receipt of this decision. You must use Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the Manager, EEO Compliance and Appeals, United States Postal Service, Great Lakes Area - Field Operations, 244 Knollwood Drive 2nd Floor, Bloomingdale, IL 60117-3010. You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 17

Right To File Civil Action

Alternatively, if you are dissatisfied with the Postal Service's final decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Traci Cannon-Stokes) v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge.  Your application must be filed within the same 90-day time period for filing the civil action.


_Michael L. Garrett_

Michael L. Garrett                                                _12/23/05_
Manager, EEO Compliance and Appeals                               Date
Great Lakes Area – Field Operations
244 Knollwood Drive 2nd Floor
Bloomingdale, IL 60117-3010

Enclosures:  Appeal Form 3573

cc:     Traci L. Cannon-Stokes
        160 N Waller Avenue
        Chicago IL 60644-2901

        Administrative Judge Christa L. Zamora
        Equal Employment Opportunity Commission
        Chicago District Office
        500 West Madison Street, 28th Floor
        Chicago, Illinois 60661-2511

        Manager, Human Resources
        Chicago District

Final Agency Decision
Traci L. Cannon-Stokes
Case No. 4J-606-0086-05
Page 18

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this Notice of Final Agency Decision was received within five (5) calendar days after it was mailed. I certify that on this date, this Notice of Final Agency Decision was mailed via Regular First Class Mail to the following parties:

Traci L. Cannon-Stokes
160 N Waller Avenue
Chicago IL 60644-2901

Administrative Judge Christa L. Zamora
Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, 28th Floor
Chicago, Illinois 60661-2511

Manager, Human Resources
Chicago District

Richard L. Rampage, Attorney
USPS Law Department
222 S. Riverside Plaza, Suite 1200
Chicago, IL 60606-6105

EEO/ADR Specialist
Chicago District

_____                    12/23/05
EEO Compliance and Appeals Specialist        Date
Great Lakes Area – Field Operations
244 Knollwood Drive, 2nd Floor
Bloomingdale, IL 60117-3010