# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACI CANNON-STOKES, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN E. POTTER, POSTMASTER ) <br> GENERAL, UNITED STATES POSTAL ) <br> SERVICE, ) <br> ) <br> Defendant. ) | Case No. 07 C 6283 |

## MEMORANDUM OPINION AND ORDER[1]

MATTHEW F. KENNELLY, District Judge:

Traci Cannon-Stokes has sued John E. Potter, in his capacity as postmaster general of the United States Postal Service, under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) & (d). She alleges that the Postal Service discriminated and retaliated against her when it forced her to take an unpaid leave of absence. The Postal Service has moved for summary judgment. For the following reasons, the Court grants the motion.

## Factual Background

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed

---

[1] The Court thanks appointed counsel for plaintiff, Aleeza Strubel, Michael O'Donnell, and Fay Clayton of Robinson, Curley & Clayton, P.C., for their thorough and diligent efforts on plaintiff's behalf.

evidence in the light most favorable to the nonmoving party." *Harney v. Speedway Super-America, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Cannon-Stokes has worked for the Postal Service since 1989. In November 1995, she was grabbed from behind and assaulted by a drunk man when she entered a building's dark vestibule while delivering mail. Because of the incident, Cannon-Stokes developed post-traumatic stress disorder (PTSD) and major depressive disorder. As a result of her PTSD and symptoms of anxiety, Cannon-Stokes repeatedly requested work accommodations from the Postal Service. In February 1997, the Postal Service offered Cannon-Stokes a modified carrier position at the Brunson Station, which no longer required her to deliver mail or perform duties outside.

While at her new position, Cannon-Stokes made additional requests to accommodate her disability. On March 19, 2003, Cannon-Stokes filed a lawsuit against the Postal Service in this District alleging retaliation, discrimination, and failure to accommodate under the Rehabilitation Act. In the fall of 2003, Cannon-Stokes requested, at least three times, her own work space or desk, a locker, and a schedule that would allow her to complete her duties during daylight hours. These requests are documented in a memorandum by her doctor dated October 22, 2003 and a letter she wrote dated October 23, 2003. The Postal Service moved Cannon-Stokes to an earlier schedule in 2004 when the Brunson Station experienced a staffing shift, gave her a locker in 2009, and never provided her with a work station or desk.

Cannon-Stokes alleges that in March 2004, she applied for disability retirement because the Postal Service had failed to accommodate her disability. She contacted Charlene Kincaid, an injury compensation specialist with the Postal Service who was

2

already familiar with Cannon-Stokes' injury and her accommodation requests.  Cannon-Stokes told Kincaid that she could no longer cope with her work conditions, and she inquired about disability retirement.  Kincaid referred her to Joyce Payne, the human resource specialist responsible for disability retirement applications for the Postal Service in the Chicago area.  Payne spoke with Cannon-Stokes about the application process and submitted her application to the Office of Personnel Management (OPM) for processing.  The application requires a supervisor's statement, which was sent to Karen Washington, station manager at the Brunson Station.  Payne resent the form to Washington and reminded her several times to fill it out.  Washington submitted the form on August 5, 2004, five months after Cannon-Stokes applied for disability retirement.

At the time Cannon-Stokes applied for disability retirement, medical expenses related to her on-the-job injury were being paid by the Office of Workers Compensation Programs (OWCP).  On November 2, 2004, OPM approved her disability retirement application.  Shortly thereafter, Cannon-Stokes realized that she had applied for disability retirement through OPM, not OWCP.  When she learned that, unlike OWCP, OPM would not cover medical expenses related to her on-the-job injury, she decided against disability retirement.

According to the policy and practice of the Postal Service, employees granted disability retirement are advised of and may use their remaining sick leave before actually taking retirement.  Furthermore, employees on leave-without-pay status may use their sick leave or other accrued leave to ensure uninterrupted pay.  Because employees can use up their accumulated sick or other paid leave time before retiring,

3

OPM requests a retiring employee's "last day in pay" status.  OPM schedules retirement payments to begin once the employee stops being paid by the Postal Service, even if that date is several months in the future.

In mid-November, Payne called the Brunson station and the Postal Service's timekeeper to request Cannon-Stokes' last day in pay status and learned that she was still working.  Payne then called Cannon-Stokes to ask when she planned on retiring.  Cannon-Stokes said that she wanted to continue working and was no longer interested in disability retirement.  Payne testified that she knows of one other individual who decided against disability retirement after he applied.  She says she instructed him to submit a letter informing OPM that he no longer wanted disability retirement.  Payne testified that she informed Cannon-Stokes to do the same; otherwise, OPM would keep asking for her last day in pay status.  Cannon-Stokes informed Payne that she wanted to speak to Kincaid first because she was looking into something for Cannon-Stokes, but that she was unable to reach Kincaid.  Although Payne never asked what Cannon-Stokes was discussing with Kincaid, she assumed Cannon-Stokes had questions about her injury.  Payne transferred the call to Kincaid's phone line.

On January 20, 2005, at a complement committee or staffing review meeting, John Richardson, a Postal Service human resources manager, learned that although OPM had granted Cannon-Stokes' disability retirement application, she had continued working for the Postal Service.  Payne informed Richardson that she had instructed Cannon-Stokes to write a letter advising OPM of her decision against retirement but that she had not yet received such a letter from Cannon-Stokes.  Richardson instructed Payne and Washington to tell Cannon-Stokes that she could not return to work until she

wrote a letter to OPM and it confirmed the withdrawal of her disability retirement.

Cannon-Stokes did not work from January 21 through January 24, 2005. She returned to work on January 25, 2005 and learned from Murdis McCoy, her immediate supervisor, that she could not report for duty because OPM had approved her disability retirement application. Cannon-Stokes talked to Washington, who confirmed that Richardson would not allow her to work because she had retired according to OPM. Cannon-Stokes claims that she was escorted out of the building and that Washington made an announcement over the public address system that she was barred from re-entering the building because she was no longer a Postal Service employee.

Concerned about her pay status while on leave, Cannon-Stokes alleges that before she left that day, she asked Washington whether she could use her sick time until reinstatement. Washington said that because Cannon-Stokes was retired and no longer worked at the Brunson Station, she could not use her sick time. Washington also referred Cannon-Stokes to Payne to discuss those matters. Cannon-Stokes says she called Richardson to request approval to use her sick time while on leave but that he never returned her calls. Richardson claims that his assistant answers all his calls and that he never knew Cannon-Stokes sought to use her sick time. He also testified that had he known about Cannon-Stokes' request, he would have granted it.

On January 25, 2005, the same day she was sent home from work, Cannon-Stokes provided Payne with a letter addressed to Robin Russell at OPM, stating that she decided against disability retirement because OWCP had not approved it. Payne forwarded the letter to OPM and informed Cannon-Stokes that she could not return to work until they received confirmation from OPM. In a letter dated January 31, 2005,

5

OPM confirmed receipt of Cannon-Stokes' withdrawal. Richardson claims that he received the letter on February 8, 2005. The Postal Service placed Cannon-Stokes on leave-without-pay status from January 25, 2005 through February 13, 2005, until Richardson reinstated her on February 14, 2005.

In this case, Cannon-Stokes claims that the Postal Service discriminated against her because of her disability and that Richardson retaliated against her for her discrimination lawsuit, by forcing her into disability retirement and placing her on leave-without-pay status. The Postal Service has moved for summary judgment.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### A. Disability discrimination claim

The Rehabilitation Act prohibits federal agencies, including the Postal Service, from discriminating against individuals with disabilities. 29 U.S.C. § 794; 39 C.F.R. §

255.5.[2]

> To establish a *prima facie* case under the Rehabilitation Act, [Cannon-Stokes] must prove that she (1) falls within the ADA's statutory definition of 'disabled,' meaning that she has a 'physical or mental impairment that substantially limits a major life activity, or [is] regarded as having such impairment," *see* 42 U.S.C. § 12102(2); (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability.

*Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008).

The last element of the test "renders employers liable for employment decisions made 'because of' a person's disability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). In *Serwatka*, the Seventh Circuit determined that "a plaintiff complaining of discriminatory discharge under the ADA must show that . . . her employer would not have fired [her] but for [her] actual . . . disability." *Id*.

The Postal Service contends that Cannon-Stokes' claim fails because she does not qualify as disabled under the Act, she suffered no adverse employment action, and she cannot prove causation because she cannot identify similarly situated employees who were treated more favorably.

### 1. Proof of disability

Cannon-Stokes claims that the Postal Service discriminated against her because she is disabled. To prove disability under the Rehabilitation Act, a plaintiff must "show

---

[2] Congress amended the Rehabilitation Act, effective January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325 (2008). This case was filed prior to the amendments' effective date. Because Congress expressed no intent to apply the amendments retroactively, "the law in place prior to the amendments" governs this case. *Fredricksen v. United Parcel Serv. Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

7

that during the pertinent time period [s]he was either prevented or severely restricted from such major daily tasks, such as walking, eating, sleeping, or sexual reproduction." *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006).

Cannon-Stokes claims that she developed PTSD, anxiety and depression as a result of the assault she experienced as a mail carrier and that this causes her to suffer from severe sleep deprivation. Sleep affects a major life activity when there is "evidence that the limitations on sleeping claimed by the plaintiff are sufficiently prolonged, severe and long-term to warrant classification as a disability." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 784 (7th Cir. 2007). The Postal Service contends that the evidence Cannon-Stokes has presented is too generalized to show that her condition was "sufficiently prolonged, severe, or long-term." *Id*.

In her own affidavit, Cannon-Stokes states that prior to the assault, she slept an average of eight hours per night but that since then, "frequently [she] cannot sleep more than three hours per night, and sometimes [she] cannot sleep at all." Cannon-Stokes Decl. ¶ 4. She states that her psychiatrist prescribed medication, which allows her to sleep better, but that it causes grogginess and drowsiness. *Id*. She also states that her "disrupted sleep interferes with [her] ability to work during the day, caus[es] [her] to be emotional, agitated, short-tempered, drowsy, and disrupt[es] [her] concentration." *Id*.

Dr. Ellen S. Herbener, a clinical psychologist who has counseled Cannon-Stokes since 2003, states that Cannon-Stokes suffers from PTSD and depression and that PTSD symptoms include increased arousal (i.e., "difficult[y] falling or staying asleep") and hyper-arousal (i.e., "demonstrat[ing] persistent symptoms of increased arousal").

Herbener Decl. ¶ 6. Herbener states that Cannon-Stokes "suffer[s] chronic, persistent and severe sleep difficulties due to hyper-arousal," which "includes symptoms such as an exaggerated startle response, hypervigilance to your surroundings, irritability, difficulty concentrating and sleeping difficulties." *Id.* ¶ 7. Because of her condition, Cannon-Stokes is easily awakened, and then it is either very difficult or impossible for her to fall back asleep. *Id.* This, in turn, affects her ability to function in the daytime. *Id.* Herbener also states that Cannon-Stokes' psychiatrist is currently treating the insomnia with medication but that "this treatment has not significantly minimized the impact of hyper-arousal on her sleep, and her chronic, severe sleep loss persists." *Id.* ¶ 8.

In sum, Cannon-Stokes has presented evidence that her sleep loss has lasted at least seven years, it has affected her ability to function in the daytime, and it has interfered with her work. A jury reasonably could find from this evidence that Cannon Stokes is disabled.

The Postal Service contends that Cannon-Stokes nonetheless cannot prove disability discrimination because she never informed her employer that her sleeping problems rendered her disabled. It cites *Hedberg v. Ind. Bell Tel. Co. Inc.*, 47 F.3d 928, 934 (7th Cir. 1995), to support its contention. In *Hedberg*, the plaintiff informed his supervisor that "he had a possible major health problem," but that was all the employer knew when it fired the plaintiff. *Id.* at 930. The Seventh Circuit determined that "an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability." *Id.* at 932.

Unlike the plaintiff in *Hedberg*, Cannon-Stokes informed the Postal Service that she suffered from PTSD and needed accommodations at work to help lessen her stress and anxiety levels. Pl.'s Mem., Exs. 9 & 10. The Seventh Circuit "ha[s] never held that an employer who acts improperly on the basis of a disability need know the extent to which the disability has progressed to be held liable." *EEOC v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 449 (7th Cir. 2008) (Williams, J., dissenting). Although the court in *Lee's Log Cabin* would not allow the EEOC to belatedly substitute AIDS for HIV as the basis for an ADA claim, the majority stated that its "opinion does not suggest that [knowledge of the extent of the disability] is required." *Id.* at 444 n. 4. A jury reasonably could find that the Postal Service was aware of Cannon-Stokes' disability at the relevant time.

### 2. Adverse employment action

To prove that she suffered an adverse employment action, a plaintiff must show that the measures the employer took "'materially alter[ed] the terms and conditions of employment.'" *Whittaker v. N. Ill. Univ.* 424 F.3d 640, 648 (7th Cir. 2005) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). Cannon-Stokes was placed on unpaid leave from January 25 through February 13, 2005. The parties agree that placing an employee on unpaid leave amounts to adverse employment action.[3]

---

[3] In a footnote in its opening brief, the Postal Service states "[i]t is established that being placed on absent without pay status is not an actionable adverse employment action" and cites *Rhodes v. Ill. Dep't of Transp.*, 459 F.3d 498, 505 (7th Cir. 2004). Def.'s Mem. at 11 n.3. In its reply, however, the Postal Service states that it "never argued in its opening brief that Cannon-Stokes did not suffer an adverse employment action." Def.'s Reply at 6. By its statement, the Court understands the Postal Service to concede that a three-week unpaid leave is an employment action that is materially adverse. *Rhodes* is inapplicable to this case in any event because three weeks without pay amounts to more harm than the "mere temporary inconveniences" at
(continued...)

*Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594, 602 (7th Cir. 2009) (three day suspension without pay is an adverse employment action); *Whittaker*, 424 F.3d at 647 (same).

The Postal Service contends that Cannon-Stokes is estopped from claiming adverse employment based on the unpaid leave because she filed a grievance and recovered $918.80. The Postal Service cites no authority to support its contention and has thus forfeited the point. *See Long v. Teachers' Retirement Sys.*, 585 F.3d 344, 349 (7th Cir. 2009) ("Unsupported and underdeveloped arguments are waived.") (internal quotation marks and citation omitted).

In any event, the Court rejects the Postal Service's argument. Though Cannon-Stokes' recovery in the grievance might impact her ability to recover backpay, it has no effect on her entitlement to seek compensatory damages, nor does it render any less adverse the fact that she was allegedly forced into taking leave without pay.

### 3. Causation

As previously explained, a plaintiff must prove that her disability was the "but-for" cause of the adverse employment action. "[A] plaintiff may show a causal link in two ways, either by (1) putting forward direct evidence of illegal motive linked to the challenged employment decision, or (2) establishing illegal motive indirectly through the three-step model of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).*" Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Cannon-Stokes does not attempt to prove causation through direct or circumstantial evidence. Rather, she relies

---

[3](...continued)
issue in that case. *Rhodes*, 359 F.3d at 505 (single absence without pay had "negligible impact on . . . income, and did not cause . . . material harm.").

11

on the indirect method of proof.

Under the indirect method, Cannon-Stokes must show that she belongs to a protected class; she performed her job satisfactorily; she suffered an adverse employment action; and a similarly situated individual not in her protected class was treated more favorably. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006). The Postal Service argues that Cannon-Stokes has not met the last of these requirements.

Cannon-Stokes says five other employees who retired were not publicly humiliated the way she says she was on her last day of work. She claims that these retiring individuals are similarly situated to her because the Postal Service considered her retired on her last day. The adverse employment action that Cannon-Stokes claims, however, is not humiliation, but rather that she was forced onto unpaid leave. Cannon-Stokes has identified no one who was similarly situated in this regard – i.e., someone outside her protected class who retired or took some form of leave and was allowed to use accumulated sick time.

**B.      Retaliation claim**

A plaintiff may prove retaliation under the Rehabilitation Act through either direct or indirect evidence. "Under the direct approach, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Burks*, 464 F.3d at 758. The indirect approach requires plaintiff to first "establish a prima facie case of retaliation by offering evidence of the following: (1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no

12

similarly situated employee who did not engage in protected activity suffered an adverse employment action." *Id.* at 759.

Cannon-Stokes bases her retaliation claim on the indirect method of proof. She engaged in protected activity by filing and prosecuting a discrimination lawsuit against her employer the Postal Service and, as the Court has concluded, she can likewise meet the second and third requirements for a prima facie case.

Cannon-Stokes' retaliation claim, however, suffers from the same infirmity as her discrimination claim. The record lacks evidence that any similarly situated employee not in her protected class was treated more favorably.

Cannon-Stokes argues that a relevant comparator is a Postal Service employee who applied for disability retirement and then decided against retiring. But the only information in the record about this person is Payne's testimony, which provides only a brief description of the employee's situation but does not explain the terms on which the employee was permitted to return to work. The Postal Service says it advised Cannon-Stokes' counsel that it could not get further information on this person because Payne could not recall his name. Cannon-Stokes claims that the Postal Service was uncooperative with her discovery requests, but if that is so, she should have filed a motion to compel. At this point in the case, Cannon-Stokes has to have evidence, not speculation. Based on the evidence submitted, it is impossible to say that the other employee was similarly situated to Cannon-Stokes but treated differently.

Cannon-Stokes also argues that the Court may compare her to non-complaining employees who applied for disability retirement and were allowed to continue working. While she does not point to any specific employees, Cannon-Stokes bases her

13

argument on Payne's testimony that Postal Service employees who apply for disability retirement are allowed to work as long as they are able. Payne Dep. 94-95. But the same was true of Cannon-Stokes; she was allowed to continue working after she applied for disability retirement. It was only after her retirement application was granted that she was forced on unpaid leave. Thus, this evidence does not support a claim of differential treatment. The fact that Richardson testified that he believed that Cannon-Stokes should have stopped working when she applied for disability retirement is irrelevant, because Cannon-Stokes was not actually forced to stop working at that point.

In a final attempt, Cannon-Stokes argues that the timing of Richardson's adverse action evidences a causal relationship. "[A] plaintiff may establish [a causal connection] through evidence that the discharge took place on the heels of protected activity." *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (internal quotation marks and citation omitted). But "[a]s the period of time separating the two lengthens, the hint of causation weakens." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998). Though a plaintiff is not precluded from using timing as evidence where there is a wide time gap, "additional proof of a causal nexus is necessary." *Id.*

Cannon-Stokes' counsel in her earlier lawsuit took Richardson's deposition on October 26, 2004. Richardson placed Cannon-Stokes on unpaid leave approximately three months later. She contends that he took that action because the deposition "inconvenience[d] and forced him to answer personally for discrimination." Pl.'s Mem. 8.

Cannon-Stokes' argument assumes that a three-month gap is "a telling temporal sequence [that] establish[es] [a causal] nexus." *Davidson,* 133 F.3d at 511 (internal

quotation marks and citation omitted). In this case, however, it is not. "[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also must put forth other evidence that reasonably suggests that [his protected activities] were related to [his] employer's . . . termination." *Burks*, 464 F.3d at 758-59 (internal quotation marks and citation omitted).

Cannon-Stokes cites Seventh Circuit cases finding that a gap of one to three months establish a causal nexus. These cases, however, are distinguishable because other evidence, in addition to mere temporal proximity, supported a casual connection. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728-29 (7th Cir. 2003) (three months after employee filed sex discrimination claim, probationary managing employee decided to fire her at meeting where he learned that it was recommended he receive counseling and training for creating a hostile work environment); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) (employer decided to discharge employee, making no mention of performance deficiencies, one month after she filed complaint of sexual harassment and only two weeks after she received an unusually high pay raise from the executive vice president); *Collins v. State of Ill.*, 830 F.2d 692, 704-05 (7th Cir. 1987) (jury verdict left intact, even if the court may have concluded that timing "was merely coincidental" where, among other things, the evidence showed that the employee often got poor reviews from the same supervisor for over two years, yet attempts to transfer were never made; the employee filed a grievance and race discrimination complaints; and the employee was transferred approximately one month after the employer learned of an upcoming affirmative action investigation).

In this case, by contrast, Cannon-Stokes offers no additional evidence that would

suggest a reasonable inference of causation. Rather, she has only the claimed temporal proximity. A three-month gap, without more, is not enough for a reasonable jury to find causation.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 41] and directs the Clerk to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 27, 2010

16